By the Court,

Bronson, J.
The plaintiff contends that as the execution in favor of Burton was levied in February, 1833, he was entitled under that execution to be paid the year’s rent which fell due on the first of April, 1832, and that the payment made to him by the deputy sheriff [37] who held the execution, should be so applied. He then insists that the defendant should have paid over to him the year’s rent which became due on the first of Apiil, 1833, on the executions of Smi.h and Burton, and of Ostrom, which were in the hands of the defendant, and were levied subsequent to that time. If the plaintiff, under the circumstances of this case, could have entitled himself to the amount of two years’ rent in preference to the execution creditors, I do not see how he can recover in this action. He sues for the rent which fell due on the first of April, 1833, and that rent has already been paid to him by the deputy sheriff. His notice was given in October, 1833, and was the same to both officers. It stated the balance of rent in arrear, but only claimed $300 for the last year’s rent. It is also stated in the case that $300, being the last year's rent due. and claimed by the plaintiff, was paid immediately after the sale. If this statement was open to explanation, the testimony of the deputy sheriff does not contradict, but. tends to confirm it. He says the money was paid agreeably to the notice ; that nothing was said between him and the plaintiff about the application, hut he intended to apply it according to the notice, for the last year's rent.
But I think the plaintiff could not have entitled himself to more than one year’s rent in preference to the execution creditors, if he had attempted to do so by his notice. Before the statute (8 Anne, ch. 14), executions took place or precedence of all debts which were not specific liens; even of rents due to landlords. This statute provided a new remedy for the landlord, but confined it to the amount of one year’s rent; on the principle that the laws favor those only who are diligent in asserting their rights (Henchelt v. Kimpson. 2 Wils. 140). Under our statute, the officer receiving notice, is directed to levy the rent claimed to be due, in addition to the amount of the execution, and to pay over the rent to the landlord; but the amount of rent to be levied shall not exceed the last year’s rent of the premises (1 R. S. 746, § 13). The plaintiff can not he entitled to a greater sum than he would have been had the executions all been in the hands of one [38] instead of two officers, and then the case is no more than this; there are several executions, one of which was levied before the rent fell due, in 1833, and the others afterwards; and then a sale takes place on all the ex-cutions. If a sale had immediately followed the first levy, the plaintiff might have given notice and entitled himself to the rent which became due *24 in 1832; and if after the next year’s rent fell due there had been another execution, he could again have claimed a year’s -rent in preference to the judgment creditor. If the first execution became dormant, so that he could not have the statute remedy under it, he might perhaps have distrained for the rent, and thus have gained a preference over subsequent judgment creditors as well as over the first execution. But he did nothing until levies had been made and sales were about to be had under all the executions. His statute remedy at tha,t time only extended to one year’s rent. In Hoskins v. Knight (1 Maule & Selw. 245), the court of K. B. held, that the landlord was only entitled to receive the- amount due for rent at the time the sheriff took possession, and could not claim the rent which fell due while that possession continued. The case was put upon the literal meaning of the statute; and the court said that the words of the enacting clause expressly point to the time of the taking, and show that the legislature contemplated one-case only in aid of the landlord, viz: that of providing against the consequences of an execution sweeping awáy what is due for rent at the time the seizure is made. There is a difference in language between our statute and the 8th Anne, ch. 14, Woodf. Land, and Ten. 465; but it is not now necessary to decide whether there should be any difference in construction. The case of Hoskins v. Knight, did not involve the question whether the landlord could entitle himself to more than one year’s rent in the whole, but only whether he could claim rent falling due after the sheriff took possession and before the sale. If the plaintiff had given notice after the levy of the first execution, and again, on the levy under the other executions when another year’s rent had become due . it may be that he would have been entitled to [39] two years’ rent. But he only gave one notice, and that after all the executions had been levied and all the rent had accrued. In Dod v. Saxby (2 Str. 1023) after the landlord had been paid a year’s rent, there came another execution, and he then claimed another year's rent, and moved the court for a rule on the sheriff; but the motion was denied, “ for the intent of the act was only to continue a lien as to one year, and to punish him for his laches, if he let more run in arrear.” The plaintiff in this case has suf fered the rent to run in arrear when he had a remedy in his own hands' and the decisions do not warrant such a construction of the statute as will relieve him from the consequences of his own negligence.
The plaintiff insists that he can at least recover the amount paid over on the executions under the count in trover. The execution in favor of Burton, was no doubt fraudulent as against other creditors, if Smith had authority to make the arrangement which was entered into between him and the sheriff, to leave the" property which had been levied on with the debtor. But the defendant had nothing to do with that execution; it was in the hands of the deputy sheriff, and the plaintiff must seek his redress in that quarter. It is said that the execution in favor of Smith and Burton, had been satisfied by a levy in May, before it was renewed and levied in August, 1833. Nothing appears on this subject except from the testimony of Van Schaick. He says a levy was made in May. It does not appear that any property was removed, a receipt taken, or an inventory made. The most that can be inferred from his testimony is, that the officer came with the execution and told the debtor he levied on all his personal property. This was not such an act as would satisfy the judgment. The creditor still had the right to have the execution renewed, and to proceed under it. There was no evidence whatever to impeach the Ostrom execution. It was renewed on the 21st October, 1833, and levied the same day.
There is another objection to the action of trover for the goods. Formerly the landlord might distrain in person, and he might have maintained trover on his own possession against a wrong-doer. But now a distress for rent *25 can only be made by a public officer (5 R. S. 501, § 3). After the distress, the goods, like those taken on execution, are in the custody of the law, and the officer alone can have an action if they are converted by a stranger.
New trial denied.