# SUPREME COURT OF TEXAS.

## GALVESTON TERM, 1870.

Z. W. MATHEWS, ADMINISTRATOR, v. A. J. BURKE.

1—The statutes of this State (Paschal's Digest, Articles 5027 to 5037), not only in express terms give to a landlord a prior lien for his rent upon the crop which may be raised on the rented premises, but they also substantially provide that this lien shall hold the crop so long as it remains on the premises, and even if the crop be removed off the premises by the tenant, that the lien shall still attach to it until the 1st day of January after its maturity.

2—Any purchaser of the crop before the 1st day of January next succeeding its maturity, takes it subject to the lien ; and the fact that he purchased, in good faith and in ignorance of the lien, will not avail such purchaser as a defense against the claim of the landlord.

3—The statutes are themselves notice to all persons of the nature and duration of the landlord's lien on the products of rented premises ; and purchasers are thereby forewarned how they contract for such products.

APPEAL from Harris. Tried below before the Hon. George R. Scott.

This was a trial of the right of property in fifteen bales of cotton, part of the crop of the year 1867, raised on the plantation belonging to the estate of F. R. Penrice, deceased, of which the appellant, Mathews, was administrator. On the 14th of December, 1867, a writ of sequestration was sued out by Mathews, and the cotton was seized thereunder. Burke, the appellee, claimed it as his property, and gave bond for trial of the right of property in it.

The case was tried at the November term (1869) of the

Harris District Court. The following written admissions, agreed upon by the parties, were given in evidence :

" 1. The claimant admits that the cotton described in the petition and writ of sequestration, and found in his possession, was raised and grown upon the plantation of the estate of F. R. Penrice, in Austin county, and was a part of the crop of 1867, of J. H. Butler and Adaline Cuney; and that Z. W. Mathews is the administrator of the estate of F. R. Penrice, deceased.

" 2. The plaintiff admits that the cotton seized by the sheriff of Harris county, by virtue of the writ of sequestration, and in the possession of the claimant, was purchased by the claimant from Alexander Sessums & Co., in the city of Houston, and that he paid said Sessums & Co. the sum of $601 80, specie, for said cotton."

These admissions were the only evidence submitted to the jury. The plaintiff offered to read the mortgage executed to him by the tenants, Butler and Cuney, and also a transcript of a judgment and decree of the Austin District Court, foreclosing the mortgage against them, and also a transcript of an indictment in that court against Butler for fraudulently selling the cotton in question. But on objection of the claimant, the court excluded all this evidence, and the plaintiff took his bill of exceptions. The jury returned a verdict in favor of Burke, the claimant. The plaintiff moved for a new trial, which was refused, and he appealed.

*Hunt & Holland*, for the appellant.

*W. S. Oldham, Jr.*, on the same side.—I also insist that the mortgage to Mathews is a lien upon the cotton sequestrated, though the same was not in existence at the time said mortgage was executed. I am willing, however, to admit it to be the general rule of the common law that nothing can be mortgaged which is not in existence and does not belong to the mortgagor at the time the mortgage is executed. This proposition is fully established by the following authorities : Wins-

low v. Merchants' Ins. Co., 4 Met., 306 ; Jones v. Richardson, 10 Met., 481 ; Lunn v. Thornton, 1 M. G. and S., 379 ; Otis v. Sill, 8 Barb., 102 ; Comstock v. Scales, 7 Wis., 159.

But these very authorities also establish the fact that this rule is founded solely upon a technicality. A mortgage is a sale upon condition ; and, as before stated, by the rule of the common law there can be no sale of a thing not in existence, and which is not at the time the property of the seller.

The rule of the civil law is the very reverse of that of the common law in this particular, and is thus stated by Domat : " Those who bind themselves by any engagement whatever may, for the security of their performance of the engagement on their part, appropriate and mortgage not only the estate they are masters of at the time of contracting, but likewise all the estate which they shall be afterwards seized or possessed of. And this mortgage extends to all the things which they shall afterwards acquire, that are capable of being mortgaged, by what title soever it be that they acquire them, and even to those which are not in being when the obligation is contracted ; so that the fruits which shall grow upon the lands will be comprehended in the mortgage of an estate to come." (1 Domat, [Cush. ed.] 649, Art. 5.)

Again : " Although the mortgage be restrained to certain things, yet it will nevertheless extend to all that shall arise or proceed from that thing which is mortgaged, or that shall augment it and make part of it. Thus the fruits which grow on the lands that are mortgaged are subject to the mortgage while they continue unseparated from the ground. Thus, when a stud of horses, a herd of cattle, or a flock of sheep, is put in pawn into the creditors' hands, the foals, the lambs, and other beasts which they bring forth, and which augment their number, are likewise engaged for the creditors' security. And if the whole herd or flock be entirely changed, the heads which have renewed it are engaged in the same manner as the old stock. Thus, when the bounds of a piece of ground that is mortgaged, happen to be enlarged by that which the course of

a river may add to it, the mortgage extends to that which has augmented the ground. Thus, a house that is built on a ground which is mortgaged, is subject likewise to the mortgage. And if, on the contrary, a house be mortgaged, and it perishes by fire, or falls through decay, the mortgage will subsist on the ground where the house stood. Thus, when a debtor mortgages a piece of ground, of which he had only the bare property, another enjoying the usufruct of it, when ·the said right to the usufruct comes to be extinct, the mortgage will comprehend the ground with the fruits." (Id., 650, Art. 7.)

There is, therefore, no inherent difficulty in making a mortgage which shall extend to, after acquired, property, or property not *in esse*. And courts of equity, which are not trammeled by the technical rules of the common law in the administration of justice, both in England and in this country, uphold such mortgages, in pursuance of the rule of the civil law, when necessary to carry into effect the· honest and just contracts of parties according to their real intentions. (Faublanque, B. 1, c. 4, § 2; Id., c. 5, § 8; 1 Pow. on Mort:,. 190; Coot on Mort., law lib. ed., 185; Noel v. Burley, 3. Simons, 103; Metcalf v. Archbishop of York, 1 Myl. & Cr.,. 553; Langton v. Horton, 1 Hare, 539; Matter of Howe, 1 Paige, 125; White v. Carpenter, 2 Paige, 217, 266; Abbott v. Jordan, 7 Shepley, 408; Foreman v. Proctor, 9 B. Monroe, 124; Jenks' Adm'r v. Groffe, 1 R. I. R., 511; Field v. The Mayor of New York, 2 Seld, 179, 186; Winslow v. Mitchell, 2 Story, 630.)

Perkins says (Title Grants, § 90,) " that if a man grants unto·. me all the wool of his sheep for seven years, the grant is. good."

In the case of Langton v. Horton, 1 Hare, 549, Vice-Chancellor Wigram says: "I lay out of view all question as to the operation of the instrument at law, and look at the case only as a˜question in equity. For some purposes, at least by contract, an interest in a thing not in existence at the. time of the contract may, in equity, become the property of the pur-

chaser for value.    A tenant, for example, contracts that particular things, which shall be on the property when the term of his occupation expires, shall be the property of the lessor at a certain price, or at a price to be determined in a certain manner. This, in fact, is a contract to sell property not then belonging to the vendor, and a court of equity will enforce such contracts where they are founded on valuable consideration, and justice requires that the contract should be specifically performed. The same doctrine is applied in important cases of contracts relating to mines, where the lessee has agreed to leave engines and machinery not annexed to the freehold, which shall be on the property at the expiration of the lease, to be paid for at a valuation.    The contract applies, in terms, to implements which shall be there at the time specified; and here neither construction nor decision has confined it to those articles which were on the property at the time the lease was granted.    Suppose the case of the owner of a ship, which is going out in ballast, proposing to borrow of another party a sum of £5000 to pay the crew and furnish an outfit, and agreeing that, in consideration of a loan, the homeward cargo should be consigned to the party advancing the money.    A court of equity, upon a contract so framed, would hold that the party advancing the money was, as against the owner, entitled to claim the homeward cargo.    And if a party may contract for the consignment of a homeward cargo, I can not see why he may not contract with the owner of a ship engaged in the South Sea fisheries, that the fruit of the voyage, the whales taken or the oil obtained, shall be his security for the amount of his advance."

The case of Pennack *et al.* v. Coe., 23 How., 126, was similar to the one at bar.    Mr. Justice Nelson, who delivered the opinion, said: " The first two grounds of objection taken to this decree may be considered together.    They are: First—that the mortgage to the trustee is void or inoperative, as respects the locomotives and cars which were levied on under the execution of the defendants, inasmuch as they were not in existence at

the date of it, but were constructed and placed on the road afterwards, being subsequently acquired property of the company. We think it very clear, if the company, after having received the money upon the bonds and given the mortgage as security, had undertaken to divert the fund from the purpose to which it was devoted, namely, the construction of the road and its equipments, and upon which the security mainly depended, a court of equity would have interposed, and enforced a specific performance. One of the covenants was, that the money should be faithfully applied to the building and equipment of the road; or, if after the road was put in operation, the company had undertaken to divert the rolling stock from the use of the road, a like interposition might have been invoked, and this in order to protect the security of the bondholders. And if a court of equity would thus have compelled a specific performance of the contract, we may certainly with confidence conclude that it would sanction the voluntary performance of it by the parties themselves, and give effect to the security as soon as the property is brought into existence.

"In conclusion upon this point, we are satisfied that the mortgage attached to ｡ne future acquisitions, as described in it, from the time they ｡ame into existence."

In the case of Tapfield v. Hillman, Chief Justice Tindall seemed inclined to the opinion that, even at law, a mortgage security of future acquisitions might have effect given to it, if the terms indicated an intent to comprehend them.

In the case of Winslow v. Mitchell, 2 Story, 644, above cited, Judge Story says: "It is a clear result of all the authorities that whenever the parties by their contract intend to create a positive lien or charge either upon real or personal property, whether then owned by the assignor or contractor, or not, or if personal property, whether it is then *in esse* or not, it attaches in equity as a lien or charge upon the particular property, as soon as the assignor or contractor acquires a title thereto against the latter, and all persons asserting a claim thereto under him, *either voluntarily or with notice*, or in bankruptcy." And to

sustain him in this opinion, we find the following authorities: Curtis v. Auber, 1 Jac. and W., 506; Douglass v. Russell, 4 Sim., 524; Beckley v. Newland, 2 P. W., 128; Hobson v. Trevor, 2 P. W., 191; Lord Dorsley v. Fitzharding, 6 Ves., 260; Wright v. Wright, 1 Ves., 409; 2 Story's Eq., § 1231; Cross on Liens, c. 12, p. 187; Preble v. Boghurst, 1 Swant, 309; Needham v. Smith, 4 Russ., 318; Randall v. Willis, 5 Ves., 262; Simond v. Hibbert, 1 Russ. Mylne, 719.

The cases of Pennack v. Coe, and Winslow v. Mitchell, are similar to the case now under consideration. This cotton was an accretion; the oxen, horses and mules were in existence at the time the mortgage was made, and the land was in the possession of Butler and Mrs. Cuney. They had given their promissory note for the same for one year, and the land was theirs absolutely for that time; their title for the year 1867 was as good as if they had a fee simple title. They could have instituted and sustained a suit for damages against Mathews himself, or any other party who would interfere with their rights in any manner to this plantation during that twelve months. If the mortgage had been executed *before* the land was rented, then it would probably be held void; but it was executed to secure the payment of the $2000 note which had already been made for the rent, and our statute also approves of a mortgage of this kind between landlord and tenant.

*Thompson & Goldthwaite*, for the appellee.—The validity of the mortgage, dated 7th day of January, 1867, to create a lien upon "all the corn and cotton that may be grown on the plantation in Austin county, belonging to the estate of F. R. Penrice, deceased, during the year 1867," is the main question in the case.

The appellee contends that the mortgage was invalid, and created no lien upon the property, which was not in existence at the time of the execution of the mortgage, and that the District Court ruled correctly in rejecting the said mortgage as evidence on the trial below.

The counsel for the appellant says: "I am willing, however, to admit it to be the general rule of the common law, that nothing can be mortgaged which is not in existence, and does not belong to the mortgagor at the time the mortgage is executed. This proposition is fully established by the following authorities: Winslow v. Merchants' Insurance Company, 4 Met., 306; Jones v. Richardson, 10 Met., 481; Lun v. Thornton, 1 M. G. and S., 379; Otis v. Sill, 8 Barbour, 102; Comstock v. Scales, 7 Wisconsin, 159." Were it necessary, we might continue the list by adding the following: Bank of Lansingburg v. Crary, 1 Barbour, 542; Cudworth v. Scott, 41 N. H., 456; Chynoweth v. Tenny, 10 Wis., 397.

The case of Comstock v. Scales, 7 Wis., 159, is, we think, alone sufficient to settle the case at bar. The court said: "The defendant in error claimed the grain in controversy by virtue of a chattel mortgage given upon it, about the time the grain was sowed and planted, and before the same was up or presented the appearance of growing grain, and the Circuit Court instructed the jury upon this point, that as soon as the grain was sown, Hatch, the tenant, could mortgage his half of the crop, and that the same would be held by the mortgage. This instruction we consider erroneous. In our opinion a chattel mortgage can only operate upon property in actual existence at the time of the execution, and can not be given, as was attempted to be done in this case, upon a crop before it can be said to be in existence. Since the subject matter of the chattel mortgage was not *in esse* at the time the mortgage was executed, there was nothing for it to operate upon. This doctrine seems to be well settled by the following authorities: The Bank of Lansingburg v. Crary *et al.*, 1 Barb. S. C. R., 542; Otis v. Sill, 8 Id. 102, and the cases cited and commented upon by Justice Paige in these decisions."

The case of Otis v. Sill (8 Barb., 102), is also a strong case, to which we direct the special attention of the court. Judge Paige, who delivered the opinion of the court, after reviewing a number of the authorities cited by the counsel for the appel-

lant in this case, and particularly Winslow v. Mitchell, 2 Story
R., 644, says : " But if an assignment of property to be acquired
*in futuro* is valid in equity, it is only valid as a contract to
assign when the property shall be acquired, not as an assign-
ment of a present interest in property, and if it be enforced in
equity, it can only be enforced as a right under the contract,
and not as a trust attached to the property.        *       *       *

" The mortgage as to such subsequently acquired property
can only be regarded as a mere contract to give a further
mortgage on such property, binding on the mortgagors per-
sonally ; and the only remedy of the mortgagee, on such con-
tract, is as a general creditor.    This is the conclusion to which
Chief Justice Shaw came, in the case of Winslow v. The Mer-
chants' Insurance Company. (4 Metc., 316).    That learned
judge held that the express covenant in the mortgage, in that
case, to execute a further instrument of hypothecation, when
the articles should be put into the building, and thus made
certain, was good only as an executory contract, and binding
upon the covenantor personally, and for a breach of which he
was liable in damages, but was not an executed contract, con-
stituting a lien *de facto* upon articles not then covered by the
mortgage.

" I am convinced that Justice Story came to an erroneous
conclusion in the case of Mitchell, assignee, v. Winslow et al.
(2 Story, 644), on the question of specific lien.   I entertain for
that jurist the most profound respect, and I should not have
presumed to differ with him in opinion had I not found the
weight of judicial authority opposed to his decision.     *      *      *

" The mortgage is in terms a mortgage *in præsenti*.    It
certainly could not take effect at the time of its execution on
property not then in existence, or not belonging to the mort-
gagors.    If a man may grant all the goods which may come
into his possession within a limited time, he may grant all the
personal property he may acquire during his whole life.    Such
an absurd grant certainly ought not to be sustained."

Again, in a recent case in the Chancery Court of Kentucky,

the Chancellor, Judge Woolley, says: " In the case of Mitchell v. Winslow (2 Story, 630), decided by Judge Story, the mortgage covered the machinery and tools then in possession, and machinery, tools and stock *in futuro*. The learned judge held the mortgage good. I looked into every case to which he referred,     *     *     *     *     and I found that all had reference to future property, to accrue to, or grow upon that which was already in existence, which was to be retained, and not circulated in trade.     *     *     *     *     So far, therefore, as that case held good, the mortgage upon future machinery to be added to that which was then in possession, and which it was contemplated would be retained, the decision was correct, but so far as it held that the future goods were also covered, it is not supported by previous authorities, and is disregarded in England, Maryland, Maine and Massachusetts.     *     *     *     *     *     *     *

" In the case of Holroyd v. Marshall, 9 Jurist, 213, decided in 1863, by a great court, and supported by the illustrious names of Lord Westbury, Lord Wensleydale and Lord Cranworth, it was held that the mortgage would not cover after—acquired property, unless it was to be an accretion by addition or growth.     *     *     *     *     After having examined the English and American cases, I was curious to see how the question was treated in the civil law, and I have looked into it. I find the same doctrine as in England and America. *     *     *     On page 650, 1 Domat, Cushing's edition it is said: ' Although the mortgage be restrained to certain things, yet it will nevertheless extend to all that shall arise or proceed from that thing which is mortgaged, or shall augment it, and make a part of it. Thus the fruits that grow upon the lands that are mortgaged are subject to the mortgage while they continue unseparated from the ground.' " [See this case fully reported in American Law Register, October number, 1869, p. 608.]

Recognizing such to be the law, the Legislature of this State passed an act in 1866, entitled, " An act to give a lien

on the crop and stock for advances to assist in making the crop."

If a lien could have been created previous to the enactment of this statute, to bind the crop to be grown, where the necessity for this statute? It was to cure this defect that it was passed.

This statute is in derogation of the common law, and must be strictly pursued to create the lien under it. It can not be pretended that the appellant is within its provisions. Under this statute, the lien is only given for *advances* to assist in making the crop, and the instrument of writing must state the consideration in express terms.

Should it be contended that the mortgage was given for the *rent* of the Penrice plantation, and therefore, under the act of 1848, and the acts supplemental thereto, the appellant, as the landlord, has a lien upon the crop raised on the rented premises, we say by the same act it is provided that: "Nothing herein contained shall be so construed as to prevent landlords and tenants from entering into such stipulations or contracts in regard to liens as they may think proper." (Paschal's Dig., Art. 1752.)

The appellant in this case has thought proper to make his own contract, and to rely upon what he supposed was a valid mortgage. He merged his right to a lien upon the crop, by taking his mortgage upon four mules, sixteen horses and three yoke of oxen. Moreover, this action was brought upon the supposed mortgage, and not by distress warrant, provided for in the act concerning rent. (Paschal's Dig., Art. 1734.) He must abide by his election, and stand or fall with his mortgage.

Again, we say that if this court should be of the opinion that the mortgage was valid and binding as between the parties to it, the appellee is not affected by it, because the same was not duly recorded. It was not acknowledged before an officer authorized to take acknowledgments for registration. It was acknowledged before the county judge of Austin county.

The Article 4678, Paschal's Digest, page 787, is, we submit,

repealed by the act of 1866, laws of eleventh Legislature, page 210, which reads thus : "Proof or acknowledgement of every instrument of writing for record *shall* be taken by some one of the following officers : First—whenacknowledged or proven within this State, before some notary public, or clerk of the County Court of any county in the State. Second—when acknowledged or proven without the State," etc.

Shall be acknowledged, is the language imperative. The county judge is not named, and for aught we know was intentionally omitted.

Again, the mortgage was not recorded within the time prescribed. by law. "All mortgages upon real estate shall, upon the usual proof, be recorded     *     *     *     within ninety days from the     *     *     *     execution of such mortgage ; and upon personal property in the county where the mortgagor lives. No mortgage shall take lien upon property unless so recorded." The mortgage in this case was executed in January, and recorded in May, more than ninety days after its date. If not recorded within the time prescribed, it becomes an absolute nullity. " No mortgage shall take lien upon property unless so recorded," is the language ; and not, no mortgage shall take lien upon property until so recorded.

The title to property mortgaged remains in the mortgagor. This has been repeatedly decided by this court. The mortgagor was in the possession of the property in this case. He was trusted with it by the mortgagee. He did not remove with the mortgaged property, but removed the property only. The act concerning registration, section 12, provides as follows : " Every deed respecting the title to personal chattels, hereafter executed, which by law ought to be recorded, shall be recorded in the clerk's office of the county court of that county in which the property shall remain ; and if afterwards the person claiming title under such deed shall permit any other person, in whose possession such property may be, to remove with the same, or any part thereof, out of the county in which such deed shall be recorded, and shall not, within four months after such

removal, cause the deed aforesaid to be certified to the County Court of the county in which such other person shall so have removed, and to be delivered to the clerk to be there recorded, such deed, for so long as it shall not be recorded in such last mentioned county, and for so much of the property aforesaid as shall have been removed, shall be void in law as to all purchasers thereof for valuable consideration, without notice, and as to all creditors." (Paschal's Digest, 2993.)

This section provides for registration in the last county only when the mortgagor removes with the property—only where there is a change of domicile. It does not apply when the mortgagor removes the mortgaged property only to another county, and there disposes of it. The mortgagor had both the title and possession. He was entrusted with the possession by the mortgagee. The mortgagee trusted most. He who trusts most shall lose most. The equities in this case are certainly equal, to say the least. "*In æqualis jure melior est conditio possidentis.*" The appellant admits that the law is with the appellee.

The record of the case of Mathews v. Butler *et al.*, from Austin county, offered in evidence on the trial in the court below, was held inadmissible by the court. We submit that this was no error. The appellee was not a party to that suit, and could not be affected by the judgment. The maxim, "*res inter alios acta nocere non debet,*" applies. Moreover, it was an imperfect and incomplete record, purporting on its face to be a record only of the petition and judgment in said cause.

As to the indictment against J. H. Butler and R. W. H. Keith, presented by the grand jury of Austin county to the District Court of said county, offered in evidence on the trial below, and ruled out, it was clearly irrelevant to the issue in this case. We can not understand for what purpose it was sought to be introduced. The indictment charges that said Butler and Keith sold twenty-three bales of cotton which they had previously mortgaged to Mathews and McGrath. Neither any particular cotton is described, nor is the instrument of

writing, by which the same was mortgaged, set out. The mortgage in this case was executed by Butler and Cuney.

In conclusion, we have only to add that the cotton in this case was purchased in the market in the city of Houston—*in market overt.*

When cotton is picked, ginned and baled, it becomes an article of merchandise. It is the great staple production of the country. It is the very essence of commerce that cotton, as well as every other article of merchandise, shall be shipped the world over without clogs, hindrance or fetters. If every bale of cotton which comes to the cotton marts of this State should, the moment it arrives, be fettered with a long-made and unknown mortgage; if the merchant was required to ascertain in what county the particular lot of cotton offered for sale was grown, and then to examine the records of that county for mortgages, before he would be safe in purchasing, the cotton markets would be paralyzed. The restraint upon the trade would almost amount to a prohibition.

Confidently believing that upon principle and authority the law is with the appellee, we submit the case.

Morrill, C. J.—The points arising in this case call for a construction of the statutes relative to rents, and more especially the landlord's lien upon the crops of the tenants for the payment of rents.

The facts, in short, are, that one Cuney and Butler, on the 7th of June, 1867, leased of Mathews, administrator, etc., a certain plantation in Austin county, for two thousand dollars, payable 1st of January, 1868, being the time of the expiration of the lease, and mortgaged to secure the payment of the rent, among other things, all the cotton and corn that might be raised on the place during the year 1867.

It further appears that in the month of December, 1867, the defendant, Burke, in the county of Harris, possessed and claimed as his own property fifteen bales of the cotton, raised and grown upon the leased plantation, holding the cotton adversely to the

claim of the landlord's mortgage and statutory lien. The landlord sequestered the fifteen bales of cotton, whereupon such proceedings were had that an issue was formed to try the respective rights of property between the landlord claiming the cotton as landlord and mortgagee, and Burke, claiming the same as a purchaser for full value paid, and without notice of any prior incumbrance.

A verdict and judgment was rendered in favor of Burke, and the landlord appeals, and assigns as error the rulings of the district judge.

The distinguished counsel have very kindly furnished us with printed briefs, evincing extensive research, but principally upon the question whether the tenant could legally mortgage the products of the farm before he had taken any step towards farming? or whether what does not exist—is not *in esse*—has not even germinated, can be mortgaged? We premise that it was upon this point that the district judge held the mortgage invalid.

We do not, in this case, feel bound to follow the counsel in their argument touching the laws of England, France, and the aborigines of this State, because our own statutes furnish all the laws necessary to decide the case.

Even without a mortgage made by the tenant, the statutes (Arts. 5027 to 5037) expressly mortgage "the crop that may be raised on the rented premises," over other creditors, for the payment of the amount due landlords for rent. They also provide, at least impliedly, and substantially, that this landlords' lien exists and holds the crop so long as it remains on the premises, and even if the tenant should remove it off the premises, still the lien attaches thereto till "the first day of January next after the maturity of the crop." (Art. 5033.)

The agreement made by the parties that the cotton in controversy was raised and grown upon the rented plantation, and was a part of the crop of 1867, coupled with the fact that the same was seized by the officer, at the instance of the landlord, in December of that year, is decisive of the controverted

points. Whoever purchased it previous to the first of January, 1868, held it in trust for the payment of the rent due the landlord. Good faith and innocence, and ignorance of the statutory lien in this or any other similar case, forms no defense to the purchaser. The statutes of the State inform all persons that a lien exists upon all products and crops of a rented place for the payment of the rent till the first day of January succeeding the raising the crop, and these same statutes bid all purchasers of cotton to beware how they purchase till that time. It is not our province to decide upon the hardness of a statute in its application to a particular case, or to pronounce it good or bad, but simply to say what the statutes provide in a given state of things.

The bills of exception taken on the trial in the District Court show that the plaintiff proposed to prove that the rents were still due, and upon objection thereto by the defendant the court sustained the position taken by the defendant. In this the court erred; and for this and other errors, apparent from the positions taken in this opinion, the judgment is reversed and remanded.

Reversed and remanded.