ELIJAH C. FINNEY, SURVIVING PARTNER, ETC.,

v.

GEORGE F. HARDING.

*Landlord and Tenant—Rent—Lien on Crops—Construction of Statute—Bona Fide Purchaser.*

A *bona fide* purchaser of farm crops. from a tenant, takes them subject to the lien of the landlord under the statute, for unpaid rent. The statute itself gives to such purchasers of this class of property sufficient warning to put them on inquiry

[Opinion filed November 23, 1889.]

APPEAL from the Circuit Court of Douglas County; the Hon. C. B. SMITH, Judge, presiding.

Messrs. ECKHART & MOORE, for appellant.

Mr. WILLIAM J. AMMEN, for appellee.

The position and claim of appellee on the question presented for consideration by this court is, that the statute means just what it says, and that in all those cases where the lien given by the statute attaches at all it attaches as against the world and remains in full, absolute and perfect effect against the world during the time limited by the statute.

unless, in the meantime, the rent secured by the lien has been paid, or the landlord has, in the meantime, waived the lien or put himself in such a position that he will be estopped from asserting it.

Under the position assumed by appellee the question of notice is wholly immaterial, except the principle that all are charged with notice of the law, and a *bona fide* purchaser, without actual notice of the facts of tenancy, etc., is not and can not be, in the very nature of things, in any better position, as regards the lien, than a purchaser with full notice of all the facts.

This position and claim of appellee we think correct and sound on principle and abundantly sustained by authorities. Matthews v. Burke, 32 Tex. 419; Kennard v. Harvey, 80 Ind. 37; Davis v. Wilson, 8 S. W. Rep. 151.

PLEASANTS, P. J.   Appellee, a resident of Chicago, made a lease in writing to Matthias Klein of a quarter section of land in Douglas County for one year from March 1, 1886, at a cash rent of $480, payable on or before the first day of January next following, and providing among other things that the crops should not be removed until the rent was paid.   In August and December, 1886, appellant, for his firm, which then was and for some years had been engaged in the business of buying and shipping grain at Tuscola, about three miles from the demised premises, purchased of the tenant oats and corn raised on said premises, of the value of $227.16, and paid him therefor in good faith and without any actual notice that he was a tenant or that the grain had been raised on demised premises.   About the first of January, 1887, Klein left the farm and the county, wholly insolvent and with $380 of the rent unpaid.   Appellee brought this suit to the October term, 1887, in assumpsit on the common counts and a special count setting out the facts, to which the defendant pleaded the general issue, which was tried by the court without a jury, under a stipulation that the form of action might be disregarded and any legal claim or defense shown.   Judgment was given for the plaintiff for $227.16.

There is no disagreement about the facts, and the only question made is whether the grain mentioned was subject, in the hands of these purchasers, to the lien given by the statute, which declares that " every landlord shall have a lien upon the crops grown or growing upon the demised premises for the rent thereof, whether the same is payable wholly or in part in money or specific articles of property, or products of the premises, or labor, and also for the faithful performance of the terms of the lease. Such lien shall continue for the period of six months after the expiration of the term for which the premises were demised." 2 Starr & C. 1504, Sec. 31.

Although this statute, with immaterial variations, has been in force for nearly a quarter of a century, and the Supreme Court has determined the landlord's right there under as against execution and attachment creditors of the tenant, and purchasers with actual notice of the lien, it does not appear to have done so directly, as against a purchaser for value without such notice. The Appellate Court for the second district, however, has recently held in favor of such purchaser. Howe v. Clark, 23 Ill. App. 145.

If we were at liberty to regard it as authority, that case would be decisive of this; but we are not, and an independent consideration of the question being forced upon us in the case at bar, we have been constrained, with all due regard to the opinion of that court, to differ from it. That opinion was thought to be sustained by inference from what had been held by the Supreme Court by the weight of authority in other States, and by sound reason.

The only decision in this State from which such an inference was claimed to be deducible, was that of Prettyman v. Unland, 77 Ill. 206. There the Circuit Court at the instance of the plaintiff had instructed the jury that if the defendants purchased the grain with notice of his lien they were liable, but refused another, to the effect that such notice need not be in writing, and for this refusal the judgment was reversed. It is asked why so, if no notice was necessary? We conceive a sufficient answer to be that plaintiff was not bound to risk any doubt of the sufficiency of the statute alone, as notice, and

might well choose not to do so, when he thought he could clearly prove actual notice; that he did in fact put his claim on the ground of actual notice, and made his proof to correspond, but not in writing; that the instruction given was based on that theory and presentation of his case, and therefore the one refused was a material supplement, even if he might have recovered, upon a different presentation, without any proof of actual notice. Without that instruction the jury might understand, from the case as presented and the instruction given, that such proof was necessary, and, from some notion of the registry laws or other supposed reason, that the kind of proof made was insufficient, and so disallow his claim. They did for some supposed reason or without reason find for the defendant, and therein were wrong as to a considerable part of it. If the verdict had been the other way and the defendants had complained of an instruction as improperly defining notice, the Supreme Court might well have affirmed the judgment, however faulty the instruction, if they were of opinion that no actual notice was required, and if they had condemned the instruction and yet affirmed the judgment, the inference would be that such was their opinion. But a contrary inference does not seem to be warranted by the reversal under the circumstances as they appear, and that the court did not so intend or understand is probable from the fact that in the later case of Hunter v. Whitfield, 89 Ill. 229, they expressly declined to intimate an opinion upon the question. The record in the Prettyman case did not present it, directly or indirectly, but did require the ruling made. As authorities from other States, supporting their conclusion, the Appellate Court cite only the following: Nesbitt v. Bartlett, 14 Iowa, 485; Westmorland v. Wooton, 51 Miss. 825; Scaife v. Stovall, 67 Ala. 237; Webb v. Sharp, 13 Wall. 330; Fowler v. Rapley, 15 Wall. 14; Beall v. White, 94 U. S. 382.

Under the Iowa code the landlord has a lien upon the crops and also upon "any other personal property of the tenant which has been used on the premises during the term, and not exempt from execution," for the period specified. As to such other property as was intended for sale in parcels from

time to time and with a view to replenishment, like a stock
of merchandise or live stock on a farm, the landlord might
well be presumed to have assented to such sales—the mass
being expected to be kept good, and so his security thereon
unimpaired.  In the case cited the property purchased was a
cow, which "was a part of the stock of the farm intended for
sale, as his course of business, governed by his interest and
the market, would require;" and on the reasoning above
indicated it was held that the purchaser was protected.  So
the same court say, in the later case of Richardson v. Peter-
son, 58 Iowa, 724, in which a team of work horses, kept by
the tenant for use and not for sale according to his ordinary
business, was held to be subject to the landlord's lien, although
the claimant had purchased in good faith without actual notice
of it; and in the still later case of Holden v. Cox, 60 Iowa,
449, that of Nesbitt v. Bartlett was expressly held to have no
application to crops, and the statutory lien upon them declared
paramount.  In the Mississippi case the property in question
consisted of two bales of cotton.  The landlord, having de-
manded them of the purchaser and been refused, brought the
suit to recover their value ;  and it was held that while
he had a lien upon it which entitled him to resort to the
property in the manner prescribed by the statute, he had not
such a right as would "entitle him to maintain trover or
assumpsit against the purchaser."  The question here involved
was not considered ; and afterward, in Dunn v. Kelly, 57
Miss. 375, the court expressly declined to give an opinion
upon it.  In the Alabama case the statute is not quoted, but
the court say its "reasonable implications support their
view ;" and the provisions from which these implications are
supposed to arise would seem to be that to the lien of the
landlord is expressly given "priority over all other debts,"
but the claims of purchasers are not mentioned; that to en-
force it an attachment may be levied upon the crop before the
rent falls due, in case of its removal or intended removal, and
upon its proceeds in case of sale.  From the expression as to
creditors and silence as to purchasers, it is argued that the
latter were not intended to be affected by the statute, but that

their case was left to the operation of the common law, and, from the other provisions referred to, that a purchase without notice was contemplated as a discharge of the property in the hands of the purchaser, and that the only guard against the danger or relief against the effect of such sale intended to be afforded by the statute, was the special right of attachment mentioned.   There is no need to question the force of this argument from the code of Alabama, since none such can be drawn from that of Illinois.

The three cases cited from the Federal Reports arose under the act of Congress which gave to landlords in the District of Columbia what it designated as a " tacit lien " upon property on the demised premises, and provided for its enforcement, among other ways, by action against "purchasers with notice."   Neither of them involved the question here under consideration, nor do we find in either anything pertinent to it, except a *dictum* in the first ·(13 Wall. 330) to the effect that the law protects purchasers without notice against the landlord's lien; but the context, immediately following, clearly shows that in that remark Justice Bradley had reference to articles intended for sale, sold in the ordinary course of business and thereupon removed from the demised premises— citing, most particularly, the case of Grant v. Whitwell, on which that of Nesbitt v. Bartlett, afterward explained as has been seen and held inapplicable to crops—was expressly based. But in each of the others, which also cite the same authority, the court said that a statutory lien has the force and effect of a common law lien with possession, which we understand to be valid, unless waived, as against any purchaser.

Counsel for appellant in argument here cite still other cases, which we notice as briefly as we may and be understood.   Thornton v. Carver, 6 S. E. Rep. 915, appears to be subject to much the same explanation as the one from Alabama, *supra*.   The Georgia statute expressly mentions only "all other liens, except liens for taxes," as being postponed to that of the landlord, and makes sale by the tenant a misdemeanor, punishable by fine in double the sum the lien was given to secure, of which one-half is to go to the landlord—"thus,"

as the court say, "paying the debt." The property in question was cotton—a staple production of the State, generally consigned to warehousemen at a distance, for sale, of whom it was bought as in the open market, without any knowledge of the producer, and passed by delivery, according to the custom of trade, "almost like bank bills." Furthermore the court, as in the Alabama case, regarded this statutory lien as a " secret lien," existing " in the breast of the landlord only." And so, upon supposed implication from the provisions and language of the act, and upon grounds of public policy and common law principles, the purchaser without notice was held to be protected against it. Haifley v. Haynes, 37 Mich. 535, involved the construction of an act which gave to laborers employed in getting out lumber, a lien for their services, paramount to all other claims upon the property, but further declaring that it should cease to exist after the expiration of thirty days from the completion or last day of their service, if within that time no statement or petition was filed, and at the end of three months from such filing, unless meanwhile a suit to enforce it was commenced, for the reason that the laborer was protected, first, by possession, and second, by his right under the act to file his statement or petition immediately upon the completion of his service, without waiting thirty days or any other time. The court held that, if he surrendered the possession to his employer, and neglected to file his statement or petition until the property was sold, after such completion, though within the thirty days, the purchaser would hold it discharged of the lien. "He may infer that no lien is insisted on." However it may have been in law, it seems this decision was in fact a misinterpretation of the mind of the legislature; for at their next session after its promulgation they removed all doubt by an amendment declaring that no sale of the property during the time allowed for filing the statement or petition, and previous to the filing thereof, should in any way affect the lien; and clearly it is not at all pertinent here.

Smith v. The Shell Lake Lumber Co., 68 Wis. 89, was under a statute precisely like that of Michigan before the

amendment, and followed the case last mentioned—one of the justices strongly dissenting.   Alexander v. Mahon, 11 Johns. 185, and Renssalaer v. Quackenboss, 17 Wend. 34, were contests between execution liens and that of the landlord, under an act stated by the court in the first to be almost an exact transcript of the statute of 8th Anne, Chap. 14, which is not in force here.   Herron v. Gill, 112 Ill. 247.   The question before this court was not involved nor referred to; and if it could be claimed that the construction there put upon that statute shall have any bearing upon it, from analogy, the answer would be that our own Supreme Court has repeatedly held directly, that under our statute the landlord's lien has preference over executions, and no notice thereof in such case is required.   So, also, of Craddock v. Riddlesbarger, 2 Dana, 205.   The above, we believe, are all the authorities from other States relied on by appellant, and for the reasons indicated they seem to us to give but little if any support to his contention.

Counsel for appellee has cited a very much larger number as being to the contrary.   And while, as to many of them, their force in application here may be more or less abated by like considerations, we think the decided weight of authority is on that side.   In Iowa, Indiana, Texas and Tennessee, particularly, the statutes appear to be most nearly like ours, and in each of those States, upon the direct question between the landlord and the purchaser without actual notice, the lien has been sustained.   The Iowa cases have already been cited. Kennard v. Harvey, 80 Ind. 37; Mathews v. Burke, 32 Tex. 419; Davis v. Wilson, 8 S. W. Rep. (Tenn.) 151.   For others referred to see Gear on Landlord and Tenant, Chap. 19, Sec. 141–7 and notes.   We understand that the common law favored executions, giving them precedence over all debts that were not specific liens, and innocent purchasers as against secret liens, and that it gave the landlord no specific lien for rent, but only a right to distrain personal property on the demised premises.   Yet the legislature had power to give it, absolutely, or with such qualification as it should think proper. When its will on the subject is duly and plainly declared the

courts are to give it effect according to the intention thus made known, and without regard to the common law in relation to it or to the wisdom or policy of the enactment.

It has not been contended that our statute contains a word or phrase of doubtful or obscure meaning, or any that suggests or leaves open a question as to the extent of its application. All agree that a "lien" is a charge upon and right to resort to the thing on which it operates, as a means of satisfying the claim it is given to secure. This is the right which the legislature has in terms declared to be given to every landlord, for rent of all kinds and however payable, upon all crops growing or grown on the demised premises, and to continue for six months after the expiration of the term. It excepts from its operation during that period no landlord, no rent, no crops so growing or grown, no adverse claim or interest. It is true that this lien is not expressly declared to be valid as against a *bona fide* purchaser without notice of it. But it is also not so declared as against execution, attachment or any other existing creditors of the tenant; and yet its superiority to their claims is beyond doubt. Thompson v. Mead, 67 Ill. 395; Mead v. Thompson, 78 Ill. 62; Hunter v. Whitfield, 89 Ill. 229; Wetsel v. Mayers, 91 Ill. 497. In neither of these cases is any reason given for the superiority, except that briefly stated in 67 Ill., that "the law creates the lien, and from its very nature, and under the statute, it must have precedence," which applies with equal force to the case of the purchaser. Yet we are asked to go outside of the statute, not to find any needed explanation of its terms or ascertain its real intention, but to see from the common law, the legislation of other States, and the effect on trade in agricultural products, that he ought to be excepted. This would be no construction, but judicial legislation. These considerations afford no ground for a presumption that our legislature overlooked and so excepted the claim of the purchaser, though it considered and postponed credits that might be given expressly upon the faith of crops to be made, for seed, team, implements or labor required to make them ; that it meant what it did not say and did not mean what it did say. If the purchaser

Finney v. Harding.

within the lien period may, for want of actual notice, hold
the property, then the landlord may, without payment and
without his consent, fault or neglect, cease to have the right
which the statute said should continue.   For it indicates no
means by which such notice may be given, and without such
indication the landlord can not use or devise any that would
certainly be effectual, since he can not know who will be the
purchaser.   And what further notice than that given by the
statute itself should be required?   "It is the commom doc-
trine," say the court, in Watt v. Scofield, 76 Ill. 264, speaking
on the subject, " that what is sufficient to put a purchaser upon
an inquiry is good notice of whatever the inquiry would have
disclosed," and hold that a purchaser of corn, knowing it was
raised on demised premises, but having no actual notice that
the rent was unpaid, was not a *bona fide* purchaser and took
it subject to the lien.   So in Mathews v. Burke, *supra*, the
Supreme Court of Texas, extending this reasoning, said of
their statute, which gave the lien until the first day of January
next after the maturity of the crop, that it "bade all pur-
chasers of cotton to beware how they purchase until that
time."   Ours, also, notifies everybody that a certain species of
property, easily recognized, is subject to a certain lien for a
limited time, if only it is raised on demised land; and where
the purchaser does not know to the contrary or has no satis-
factory assurance thereof, how can he fail to apprehend that
it may have been so raised, and thus be put upon inquiry?
The kind of property offered him would naturally call to mind
the caution of the statute in relation to it.   This is a marked
distinction between such a lien and one created by mere
agreement of the parties—a distinction recognized by the
court as affecting this question of notice in Prettyman v.
Unland, 77 Ill., on p. 211.   In this respect also we perceive a
strict analogy to the liens of mechanics and material men,
which make the decisions in relation to them pertinent and
forcible, if not conclusive, here.   For no other reason than
that they are given by a public law, designating generally the
kind of property made subject to them, these decisions have
uniformly enforced them as against purchasers without actual

notice of them. Thus in Clarke v. Moore, 64 Ill. 279, it was declared that, "under the law it is the duty of those purchasing or taking liens on the property to ascertain, as best they may, whether it is incumbered with mechanics' liens, and they purchase it subject to such liens." And speaking of the landlord's lien (as against execution and attachment creditors, no case against a purchaser without notice having yet arisen) the court said : "The law creates the lien, and from its very nature and under the statute must have precedence, unless it has been waived or the landlord has been guilty of *laches*," and again declared it to be "a permanent lien, of which every person must take notice, and can be lost only by waiver and failing to enforce it at the proper time." Thompson v. Mead, 67 Ill. 395. These declarations were reiterated in Mead v. Thompson, 78 Ill. 63, Hunter v. Whitfield, 89 Ill. 229, also Wetsel v. Mayers, 91 Ill. 499, and must therefore be accepted as the deliberate and settled opinion of that court. If there be any solid ground of distinction between the lien of the mechanic and that of the landlord we do not perceive it.

It is true that in Clarke v. Moore, *supra*, Mr. Justice Walker said of mechanics' liens, that they were " secret;" but with all deference we think the expression was not called for nor well considered. They have the force and effect of common law liens, with possession, which is not secret. They are created by statute and the statute is not secret. In the case of Richardson v. Peterson, 58 Iowa, 724, the court said : " The vendor of the personal property transfers the title and interest he holds therein, subject to the liens recognized by the law" (by which we understand is meant the statute). "This rule prevails in all cases except those wherein a purchaser without notice is protected by statute, as under the registry laws. If a statute creating a lien provides for no protection in favor of persons having no notice thereof, property subject thereto can not be transferred free from the lien, on the ground that the purchaser had no notice of its existence. Unless these principles be recognized the lien conferred by the statute above quoted would fail to give protection to the landlord. "

We think our statute was intended to give real security to the landlord for his rent—to the landlord living at a distance from the demised premises (as in this case) no less than to one near by; that his principal peril was from lien creditors of the tenant and purchasers without notice, since he could protect himself as against the tenant and trespassers and purchasers with notice; that of itself it gave to all such creditors and purchasers a warning sufficient to put them on inquiry; that as to such creditors its efficiency has been authoritatively determined; and that to allow the lien to be defeated by such a purchase would make it substantially nugatory at a point where it most needed to be of force.

Appellant's firm, then, having taken the grain subject to appellee's lien and so disposed of it as to prevent his resort to it, should answer to him in some form of action for the injury thus done. In Holden v. Cox, 60 Iowa, 449, it was held that "whoever consumes or destroys personal property, upon which another has a lien, becomes liable to the lien holder in damages."

It does not distinctly appear that they converted this grain into money, though it might be so presumed from the fact shown, that their business was buying, shipping and selling grain. In that case we see no objection in principle to assumpsit for money had and received to appellee's use, as a remedy; nor, if otherwise, to an action on the case. The judgment is affirmed.

*Judgment affirmed.*